UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALLEN STROSKI,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:18-cv-0526-KJN<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 16, 22) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act.[1] In his summary judgment motion, Plaintiff contends the Administrative Law Judge erred in failing to articulate (A) specific and legitimate reasons for discrediting "persuasive opinion evidence" regarding Plaintiff's mental limitations; and (B) clear and convincing reasons for discrediting Plaintiff's own statements of these limitations. The Commissioner opposed, and filed a cross–motion for summary judgment.

After considering the parties' written briefing, the record, and the applicable law, the Court DENIES Plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

---

[1] This action was referred to the undersigned pursuant to L.R. 302(c)(15), and both parties consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

1

# I. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

Plaintiff was 50 years old when in early 2012 he stopped working various labor jobs. (Administrative Transcript ("AT") 24, 48–51.) On November 18, 2013, Plaintiff applied for Disability Insurance Benefits ("DIB"), contending he was disabled due to his anxiety, depression, and a general inability to work on a schedule or maintain regular attendance. (AT 84.) Plaintiff's application was denied initially and again upon reconsideration. (AT 79–118.) Plaintiff, aided by an attorney, sought review of those denials with an Administrative Law Judge ("ALJ"). (AT 133.) At an August 9, 2016 hearing, Plaintiff testified about his condition, and the ALJ heard testimony from a vocational expert ("VE") regarding Plaintiff's ability to perform various occupations. (AT 43–77.)

On September 26, 2016, the ALJ issued a decision determining that Plaintiff was not disabled from his onset date through his date last insured. (AT 26.) As an initial matter, the ALJ determined that Plaintiff met the insured status requirements of the Act for purposes of DIB for the relevant period. (AT 26.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity. (Id.) At step two, the ALJ determined Plaintiff had the following impairments: paroxysmal atrial fibrillation, hypothyroidism, symptoms consistent with

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S. 137, 140—42 (1987). The following summarizes the sequential evaluation:
> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

fibromyalgia, depression and anxiety. (AT 26.) However, the ALJ determined at step three that these impairments did not meet or medically equal the severity of an impairment listed in Appendix 1. (AT 26–27) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Based on this information, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, within certain parameters. (AT 29.) Specifically regarding Plaintiff's mental impairments (relevant to these cross–motions), the RFC limited him as follows:

> He is able to perform simple, repetitive, one to two step job instructions. He is able to perform technical, complex job instructions but with supervision. He is able to maintain attention, concentration as it pertains to the simple, one to two–step job instructions and to the technical job instructions with supervision. He should avoid dealing with a lot of changes in the routine work setting. He is limited to occasional interaction with the public and coworkers, but on a frequent basis with supervisors. He should avoid an environment that is very noisy.

(Id.) In reaching this conclusion, the ALJ considered those of Plaintiff's intense, persistent, and limiting symptoms that were consistent with the medical evidence and opinions of Plaintiff's physicians. (Id.) This evidence included the reports and opinions of treating physicians Dr. Kline and Dr. Nguyen, as well as the opinions and records from multiple examining and non–examining physicians. (AT 29–35.) In so synthesizing the RFC, the ALJ (1) discounted Dr. Kline's assessment that Plaintiff's ability to maintain a schedule and work attendance was "poor"; (2) appeared to discount Dr. Nyugen's assessment that Plaintiff's "anxiety would impair [his] concentration"; (3) discounted one of Plaintiff's Wechsler Memory Scale–IV tests, scoring Plaintiff memory as "extremely low," as conducted by an examining physician (Dr. Bowerman); and (4) discounted certain RFC findings from two agency–consultative physicians (Drs. Barron and Covey). (Id.) The ALJ also discounted Plaintiff's testimony as to his symptoms. (Id.) The ALJ concluded at step four that Plaintiff was unable to perform his past work, but had acquired skills from past jobs that allowed him to perform many other occupations in the national economy (at step five). (AT 35–36.) Thus, the Commissioner determined that Plaintiff was not disabled. (Id.)

On January 5, 2018, the Appeals Council denied Plaintiff's request for review. (AT 1–6.) Plaintiff then timely filed this action requesting judicial review of the Commissioner's final

1 decision; the parties filed cross–motions for summary judgment.  (ECF Nos. 1, 16, 22.)

## II. LEGAL STANDARD

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017).  Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Id.  The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008).  Further, the court may not reverse the ALJ's decision on account of harmless error.  Buck, 869 F. 3d at 1048.

## III. ISSUES PRESENTED

Plaintiff contends the ALJ's decision, as detailed above, is not supported by substantial evidence.  Plaintiff argues the ALJ erred in failing to articulate (A) specific and legitimate reasons for discrediting "persuasive opinion evidence" regarding Plaintiff's functional limitations—as multiple physicians at all levels identified more–severe mental impairments ignored by the ALJ upon synthesis of Plaintiff's RFC; and (B) clear and convincing reasons for discrediting Plaintiff's own statements—as his testimony supported the fact that his mental impairments are more severe than the ALJ credited.  (ECF No. 16–1 at p. 17–32.)  Plaintiff seeks a remand for benefits or for further proceedings.  (Id. at p. 32.)

The Commissioner disagrees, arguing that in light of the medical evidence and opinions of other examining psychologists, the ALJ sufficiently detailed why he (properly) did not include the more severe restrictions in the RFC, as well as why he (properly) found Plaintiff able to work under the identified mental work restrictions.  (ECF No. 22.)   Thus, the Commissioner contends the RFC (and decision as a whole) is supported by substantial evidence, which should result in the ALJ's opinion being affirmed.  (Id.)

////

4

## IV. DISCUSSION

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F. 3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F. 3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F. 3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the Court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester, 81 F. 3d at 831. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Id. at 830. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989) (citation omitted).

**A. The ALJ's RFC determination is supported by substantial evidence, and the ALJ provided specific and legitimate reasons for discounting evidence cited by Plaintiff.**

Plaintiff contends the ALJ should have incorporated into the RFC certain mental impairments, as discussed by four of Plaintiff's physicians and shown by medical evidence. It is for the ALJ to assess a claimant's RFC. See 20 C.F.R. § 404.1546(c).

1. Dr Kline's February 2014 Treating Opinion

Dr. Kline's evaluation form indicated Plaintiff had depression and intense anxiety. (AT 436.) The Dr. checked "fair" for most medical source statements (understand, remember, and carry out complex [and] simple instructions; maintain concentration, attention, and persistence; complete a normal workday and workweek without interruption from psychologically based symptoms; interact appropriately with public, supervisors, and co–workers; respond appropriately to changes in work setting). (AT 438.) However, he checked "poor" for Plaintiff's "ability to

5

perform activities within a schedule and maintain regular attendance." (Id.) Dr. Kline's opinion was given "significant weight" by the ALJ, save for the one "poor" rating. (AT 33.)

Plaintiff argues the ALJ is required to give weight to the subjective judgments of treating physicians, and so rejected Dr. Kline's "poor" finding erroneously. See Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995); Embrey v. Bowen, 849 F.2d 418 (9th Cir. 1988) (The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations). However, the ALJ can (and in fact must) resolve ambiguities in medical evidence, so long as he provides specific and legitimate reasons for rejecting any portions. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ stated he rejected this "poor" rating because it was unsupported by Dr. Kline's other findings, including that Plaintiff had "only slightly distracted concentration but otherwise [had] unremarkable sensorium and cognitive functioning." (AT 33.) The ALJ's decision was specific as to his reasoning, and was a legitimate exercise of his duties to resolve ambiguities. Bray v. Comm'r., 554 F.3d 1219, 1228 (9th Cir. 2009) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

2. Dr. Nguyen's June 2016 Treating Evaluation

Dr. Nguyen's evaluation form indicated Plaintiff's "emotional factors" contributed to the severity of his symptoms and functional limitations. (AT 982.) Dr. Nguyen further found Plaintiff's anxiety would impair his concentration and affect his ability to work at a regular job on a sustained basis. (AT 985.) The ALJ accorded "partial weight" to Dr. Nguyen's assessment, and appears to have mainly concentrated on the physical impairment findings in doing so. (AT 33.) Plaintiff maintains (in a footnote) that the ALJ thus failed to offer specific and legitimate reasons for leaving this portion of Dr. Nguyen's opinion out of Plaintiff's RFC. However, the Court notes that the ALJ dedicated significant space in the decision to Plaintiff's failure to follow through with mental health treatment. (See AT 29–32.) To quote:

> Turning to [Plaintiff's] alleged mental impairments, he has not generally received the type of treatment one would expect, given his allegations of disabling anxiety and depression. A review of the medical records revealed no actual formal mental health treatment.

6

(AT 32.) The ALJ then compared specific reports where Plaintiff exhibited some symptoms to other contradictory reports, tests, exams, and opinions. (See Id., citing AT 342, 344, 346, 349, 353, 435–37, 668.) Specifically for Dr. Nguyen, ALJ stated that the objective evidence "as discussed above" did not support Dr. Nguyen's opinion that absences from work were likely. (Id.) This evidence is specific, and a legitimate exercise of authority. Bray, 554 F.3d at 1228.

3. Dr. Bowerman's May 2014 Examination

Dr. Bowerman reported after her psychological evaluation of Plaintiff that Plaintiff was moderately impaired in multiple functional abilities due to his "mood, anxiety, and amnestic disorders." (AT 513.) Relevant here, Dr. Bowerman reported that Plaintiff's immediate, delayed, and auditory memory scored "extremely low" on the Wechsler Memory Scale IV. (Id.) The ALJ gave Dr. Bowerman's opinion "significant weight," save for the "little weight" given to her assessment the WSM IV score. (AT 34–35.) The ALJ discounted Dr. Bowerman's WSM–IV findings because of its limited "snapshot" value. Plaintiff asserts this was error, as these scores are generated in controlled settings, and Plaintiff's score (an "extremely low" 47) would logically be higher than if it were assessed in the work environment. However, the ALJ specifically cited to another physician's opinion where Plaintiff scored much higher on the same test (AT 445), and both tests were given little weight due to their limited value. Case law is clear that the ALJ may discount such tests, and the ALJ properly considered this test against the backdrop of the remaining medical evidence. Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) (a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment.").

4. The Reports of Two Agency Consultative Physicians in Plaintiff's DIB Determination

Dr. Barrons examined Plaintiff in connection with his initial application for DIB. The report found Plaintiff to be moderately limited in multiple mental categories (understand, remember, and carry-out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal work day and workweek without interruption from

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting). (AT 93–94.) These findings were confirmed by Dr. Covey upon the Commissioner's reconsideration. (AT 113–14.)

The ALJ gave "some but not great weight" to these findings, slightly discounting the mental assessments when synthesizing Plaintiff's RFC. (AT 33.) Notably, the ALJ actually afforded Plaintiff more leeway than these two physicians allowed for — because they did not take his subjective complaints into account. (AT 33) Plaintiff argues that despite the ALJ's statement of greater leeway, the RFC "failed to reflect the specific work related limitations" (though Plaintiff fails to specify which specific limitations he disagrees with). (See ECF No. 16 at p. 25–26.) A review of the ALJ's RFC indicates he adequately synthesized those limitations supported by the medical evidence, and appropriately discounted the unsupported limitations. See Batson v. Comm'r., 359 F.3d 1190, 1197 (9th Cir. 2004) (allowing for an ALJ to discount unsupported opinions in formulating an RFC).

5. Plaintiff's Miscellaneous Assertions

Finally, Plaintiff asserts throughout his brief that his anxiety, panic attacks, and depression were generally more severe than the ALJ credited. For example, at one point Plaintiff details thirty–four separate documents in the medical record where those issues arose. (See ECF No. 16 at pp. 18–24, citing to AT 338–39, 340–42, 342–44, 345–46, 348–50, 351–53, 354–55, 356–57, 368, 369–70, 372, 395–96, 399–400, 450, 451, 453–54, 457, 522, 591, 679, 703, 798, 801–02, 805, 851, 853-54, 864, 866, 868, 873, 880, 883–84, 898, 901, 952, and 963–64.) However, the ALJ properly parsed Plaintiff's claims, "generously" accounted for his subjective complaints in formulating the RFC, and supported this synthesis by citing to a substantial number of medical records and opinions in support. (See AT 29–35.) Thus, to the extent Plaintiff takes issue with any other portion of the ALJ's decision, the Court finds it supported by substantial evidence, and defers to the ALJ's resolution of the conflicts. Batson, 359 F.3d at 1198.

**B. The ALJ properly compared Plaintiff's subjective complaints with the evidence.**

Under 20 C.F.R. 404.1529, subjective statements from a claimant must be consistent with the medical and other evidence in the record. The ALJ considers a claimant's subjective symptoms by first determining "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017). Then the ALJ evaluates "the intensity and persistence of symptoms." Trevizo v. Berryhill, 871 F.3d 664, 679 at fn.5 (9th Cir. 2017).

Here, Plaintiff testified at the hearing:

> It's a total package, sir. . . . I've got numerous mental issues, things going on . . . . Okay, so and I'm convinced I'm over medicated and who knows what side effects that's creating. Dizzy for sure . . . . I've got the classic depression. Well who wouldn't be. Scared, bored, nervous, anxiety, all those in a nice little package for you . . . . There's a lot, oh yeah, and then, and then I've also got one little other problem, just a little mental problems, I'm having a hard time talking, so bear with me here. So, when I'm feeling really crappy, I'm super hypersensitivity, the doctor called it, to noises like dogs barking, ringers, cars the buzzer, people talking too loud, too many people talking, so yeah, so, you know, I can't go to restaurants, can't be in public places, can't go to family functions, I can't, I was starting to wear ear plugs because it drives me crazy . . . . I think that's about it.

(AT 58–60; see also AT 65 (testifying that he had "constant" depression and anxiety, that he "virtually can do nothing, almost nothing.") The ALJ considered Plaintiff's testimony, found his impairments could "reasonably be expected to cause the alleged symptoms," but found his statements regarding the "intensity, persistence and limiting effects" of the symptoms out of line with the medical and other evidence in the record. (AT 31.) Accepting that Traviso requires an ALJ to state "specific, clear and convincing reasons" to reject a claimant's testimony, 871 F.3d at 678, the undersigned finds this standard to be met. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptoms "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor"). As indicated in Section A above, the ALJ provided an extensive analysis of the medical evidence regarding Plaintiff's mental impairments, which the Court will not repeat here. (See AT 32–34.) Further, the ALJ documented other reasons why the RFC

should not include more severe restrictions, including the fact that Plaintiff often failed to comply with his physicians' mental health treatment and failed to continue with other formal mental health treatment. See SSR 16-3P (S.S.A. Mar. 16, 2016) ("Medical sources may offer diagnoses, prognoses, and opinions as well as statements and medical reports about an individual's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms."). While Plaintiff points to other reasons why he ceased with these treatments, it is again for the ALJ to resolve such ambiguities in the record. See Lester, 81 F. 3d at 834 (clear and convincing evidence requires the ALJ to determine "what testimony is not credible and what evidence undermines the claimant's complaints.").

## V. CONCLUSION

In sum, the Court finds that the ALJ's decision was free from prejudicial legal error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner; and
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: September 26, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

stro.536